IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No.: 16-CR-57 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | DEFENDANT'S SENTENCING |
| TYLER KONIGSMARK, ) | MEMORANDUM |
| ) | |
| Defendant. ) | |

Tyler Konigsmark, through counsel, hereby submits the following sentencing memorandum for the sentencing set at 10:00 a.m. on December 1, 2016.

### I. Witnesses

1. Arthur Konar

### II. Exhibits

Exhibit A: Statutory Rape Laws by State

Exhibit B: Iowa Board of Parole, FY 15 Annual Report - Appendix B

Exhibit C: Arthur H. Konar, PhD, DABS, report

Exhibit D: Cedar Rapids Community School District records

Exhibit E: Letters

### III. Issues

There are no disputes regarding the calculation of the advisory Guidelines. Mr. Konigsmark does, however, submit that a variance is appropriate. Mr. Konigsmark respectfully asks the Court to vary downward based on the factors set forth in 18 U.S.C. § 3553(a). Because

1

the sentencing guidelines are merely advisory, *United States v. Booker*, 543 U.S. 220, 125 S.C. 738, 764 (2005), the district courts must individually assess each case based on the factors in § 3553(a) to determine what sentence is sufficient, but not greater than necessary, to meet its sentencing purposes, including the nature and circumstances of the offense, the history and characteristics of the defendant, and the kinds of sentences available. *See United States v. Hack*, 403 F.3d 997, 1003 (8th Cir. 2005). The sentence should reflect the goals of § 3553(a), which are:

> A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; B) to afford adequate deterrence to criminal conduct; C) to protect the public from further crimes of the defendant; and D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2).

In addition to these sentencing factors, the Court may consider policy considerations relevant to the applicable guideline section. *Rita v. United States*, 127 S.C. 2456, 2465 (2007). The Court may vary outside of the guideline range, even in a "mine-run" case, if it disagrees with the policy of that guideline section. *See Kimbrough v. United States*, 128 S.C. 558, 563, 570 (2007). That is, while the Court must consider the Guidelines, the Court is free to reject the guideline to fashion a sentence that is not greater than necessary under § 3553(a). *Id*.

The particulars of Mr. Konigsmark's case demonstrate that a sentence within the advisory guideline range is greater than necessary under the § 3553(a) factors. Therefore, Mr. Konigsmark requests that the Court vary downward to achieve a sentence that is not greater than necessary under § 3553(a). Specifically, Mr. Konigsmark requests that the Court vary downward and sentence him between 151 and 188 months' imprisonment.

Mr. Konigsmark respectfully submits that a variance to a sentence between 151 and 188 months' imprisonment will be sufficient to meet the statutory sentencing purposes. Primarily, he submits that, in this particular case, neither the nature of the crime, nor his history support abiding by the guidelines advisory range in the final sentencing decision.

At present, Mr. Konigsmark awaits sentencing for a violation of 18 U.S.C. § 2422(b). Mr. Konigsmark has committed an undoubtedly serious offense. Mr. Konigsmark engaged in an unlawful sexual relationship with a minor, and deserves a strong punishment for that action. However, the nature of his crime, including the request for pictures from more than one minor, however, is not unusual. Notwithstanding that his offense is not atypical of those committed under the statute of conviction, Mr. Konigsmark instead comes on for sentencing with a guideline range applicable to those who not only inflict the exact same harm on children, but who do so with the intent that the harm will be magnified by others viewing or trafficking in the memorialization of those harms. § 2G2.1(c)(1). The fact that Mr. Konigsmark requested illicit pictures which were only intended for his (brief) viewing, is simply not the same as that conduct.[1]

Rather, the PSR paints a picture of an individual whose conduct appears more concerned with an illicit sexual relationship. That images were requested from more than one minor, and that Mr. Konigsmark twice had unlawful sexual intercourse with one minor meet the minimal requirement to trigger the particular sections in the guidelines (§§ 2G2.1, 3D1.4, and 4B1.5(b)(1); however, it does not change the fact that the requests for pictures appear to be

---

[1] Images received via Snapchat are designed to delete automatically. https://support.snapchat.com/en-US/a/when-are-snaps-chats-deleted

3

incidental to the primary offense, and that there is no indication that they were intended to be transmitted and shared elsewhere (or even possessed beyond a matter of seconds). Mr. Konigsmark does not suggest that the depictions ought to be ignored, but submits that the depictions (and his supervisory control) are only aggravating factors in reaching his final sentence, not the single-driving factor in the sentence calculation. Mr. Konigsmark submits that the Court could account for the aggravating factors by choosing a sentence between 151 and 188 months.

Comparison of Mr. Konigsmark's offense level to other guidelines further demonstrates that his advisory range overstates the proper sentence in his case. Mr. Konigsmark's offense level is 43. PSR ¶ 57; § 5, Part A, comment. (n.2). Mr. Konigsmark submits that, as serious as his offense is, a sentence based upon a level 43 is beyond what is sufficient. Offense level 43 is the highest level in the sentencing table, and the offense level applicable to the most serious offenses in the United States Code. For example, an individual convicted of first degree murder or aircraft piracy resulting in death, both of which carry lifetime minimums, faces a base offense level of 43. 18 U.S.C. §§ 1111, 46502(a)(2)(B); USSG §§ 2A1.1, 2A5.1. In fact, certain crimes which carry twenty-year minimums–double the minimum applicable to Mr. Konigsmark–carry offense levels which are only a level higher than Mr. Konigsmark's proposed pre-acceptance variance point. *See, e.g.,* USSG § 2A5.1 (base offense level 38 for violation of 49 U.S.C. §§ 46502(a)(2)(A); USSG § 2D1.5(a)(2) (base offense level of either 2D1.1 offense plus four, or 38 for violation of 21 U.S.C. § 848(a)).

In noting that there are offenses which are more serious, Mr. Konigsmark does not seek to persuade this Court that his crime was not itself of grave seriousness, only that his offense does

4

not fall at the furthest possible point which his guideline calculation would otherwise establish. *See United States v. Ontiveros*, No. 07-CR-333, 2008 U.S. Dist. LEXIS 58774, 2008 WL 2937539 at 5 (E.D. Wisc. 2008) (stating that "A court should exercise caution to avoid imposing a sentence for a crime some fear a defendant could commit in the future, instead of for the crime he actually committed and for which he is before the court."). Mr. Konigsmark submits that this demonstrates that, in his case, the guidelines do not countenance the sentence which the current calculation proposes.

The pertinent state statutes likewise demonstrate that a lesser sentence would be consistent with 18 U.S.C. § 3553(a). Each of the fifty states, plus the District of Columbia, has enacted statutes criminalizing sexual conduct between individuals Mr. Konigsmark's age and individuals A.P.'s age. Exhibit A. To say that Mr. Konigsmark's recommended sentencing range would be above the maximum in all but a handful of states is not to say that this Court cannot now, or should not ever, apply a sentence which exceeds what the vast majority of other jurisdictions authorize. But, Mr. Konigsmark does contend that the existence of statutory maximums which are below, often substantially so, his advisory range is but one example of what the seriousness of the crime and actually-just punishment of the offense are. Exhibit B. Mr. Konigsmark committed a great wrong, but he has not shown himself to be the worst among individuals who have committed the same or similar offense. *Compare*, *United States v. Almazan*, 908 F. Supp.2d 963 (N.D. Iowa 2012). Mr. Konigsmark respectfully suggests that while technically his conduct does trigger enhancements under §§ 3D1.3, 3D1.4, and 4B1.5(b)(1), that categorical application of those guidelines to the instant conduct inappropriately punishes him without distinction between his culpability vis-a-vis other offenders.

5

Mr. Konigsmark respectfully submits that the Court should reject full application of § 2G2.1 to the instant conduct. First, § 2G2.1 is not a product of the Commission's empirical analysis. *United States v. Huffstatler*, 561 F.3d 694, 696-97 (7th Cir. 2009); *see also U.S.S.G. App. C, Vol. I, Amends. 537 & 538* (Nov. 1 1996); Vol. II, *amend. 592* ( Nov. 1, 2000), *615 (*Nov. 1, 2001), *649* (April 30, 2003); Supp. Vol., *amend 651 (*Oct. 27, 2003), 664 (Nov. 1, 2004); United States Sentencing Commission, Report to Congress: Sex Offenses Against Children, Findings and Recommendations Regarding Federal Penalties (June 1996). Rather, § 2G2.1 is the result of Congressional "directives to the Commission to change sentencing policy for sex offenses." *Id.* Second, § 2G2.1 possesses many of the sentencing enhancements that have convinced many courts to reject § 2G2.2.[2] *See United States v. Jacob*, 631 F. Supp. 2d 1099 (N.D. Iowa 2009). Finally, Mr. Konigsmark asserts that the advisory guideline recommendation of life imprisonment is "greater than necessary" under § 3553(a), and that the enhancements received by Mr. Konigsmark may have had some political appeal when written does not give them any empirical utility as a valid reflector/predictor of culpability or dangerousness. *Id.*

Mr. Konigsmark recognizes, as in any case with identifiable victims, the issue of whether an individual will endanger the community upon release is an especially significant concern. Should the Court vary downward, Mr. Konigsmark will immediately be supervised by United States Probation at the "highest" level, regardless of his Post-Conviction Risk Assessment. And, upon his release, there is good cause to believe that Mr. Konigsmark will not reoffend. *See*

---

[2]Mr. Konigsmark recognizes that while he is not subject to §§ 2G2.1(b)(3) or (b)(4), he is subject to §§ 2G2.1(b)(1) and (b)(6)(B).

6

Federal Probation, *How Dangerous Are They? An Analysis of Sex Offenders Under Federal Post-Conviction Supervision*, September 2016. A three-year study of recidivism rates for defendants, such as Mr. Konigsmark, convicted of "Transportation for illegal sexual activity", shows the incidence of recidivism for a "sex arrest" was only 2.4%. *Id*., Table 5. The incidence of arrest for a "major arrest" was 7.8%, and the incidence of arrest for a "non-sexual violent arrest" was 1.6%. *Id*. The recidivism rate for defendants convicted of child pornography offenses with an "official record of contact behavior" were roughly the same; 4.1% for any sex arrest, 6.9% for any major arrest, and .7% for a non-sexual violent arrest. *Id*. That the study also found that defendants convicted of "illegal transportation were rearrested or revoked at rates more similar to the child pornography offenders, than to the sexual assault and SORNA offenders" further demonstrates that defendants like Mr. Konigsmark are not likely to reoffend. *Id.*, at p.29. Indeed, the study found that "in a somewhat surprising finding, this research shows that child pornography offenders with background of contact sexual offending exhibit only slightly higher risk characteristics and recidivism rates compared to child pornography offenders with no records of contact sexual offending." *Id.*, at p. 30. Finally, the study concluded that it and future research creates reason for optimism that United States Probation will be able to help federal sex offenders lower their risk for recidivism. *Id.*, at p. 31.

Further, the specifics of this case give stronger-than-usual reason to believe that Mr. Konigsmark will not continue to harm the community upon his release from custody. Exhibit C. That Mr. Konigsmark's maturation and behavior have been delayed by his intellectual adolescence is strong mitigation. Exhibit C; *See Graham v. Florida*, 130 S. Ct. 2011, 2026 (2010) (quoting *Roper v. Simmons*, 125 S. Ct. 1183 (2005)) ("developments in psychology and

7

brain science continue to show fundamental difference between juvenile and adult minds," accordingly an undeveloped mind "is not as morally responsible reprehensible as that of an adult."). The Defense recognizes that Mr. Konigsmark was an adult at the time of the instant conduct, but respectfully submits that his substantial emotional and intellectual immaturity, not his age, most accurately reflect the level at which he functions. *See* James Fife, *Mental Capacity, Minority, and Mental Age in Capital sentencing: A unified Theory of Culpability*, 28 Hamline L. Rev. 237, 261 (2005) (footnote omitted) (citing *Atkins v. Virgina*, 122 S. Ct. 2242 (2002)) ("'Mental age' as commonly understood is the chronological age equivalent of the person's highest level of mental capacity. That is, judging only from the person's cognitive and behavioral capacities, what age would we typically associate with this level of functioning? It is an incapacity to think or act on a higher level of functioning, not merely a failure to do so.").

The circumstances of the instant offense also militate in favor of a downward variance. The PSR does not indicate that he continued to contact A.P. after law enforcement first approached him. The PSR does not indicate that he continued to request images from O.T after she refused. And, the PSR does not indicate that he attempted to contact C.S. after she blocked him on Snapchat. Neither is there anything in the PSR that suggests that Mr. Konigsmark is attracted to pre-pubescent minors, or that he requested sadistic or masochistic images from A.P., O.T., or C.S. Exhibit D. Nor does the PSR reflect that Mr. Konigsmark's conduct included distribution of the images he received from A.P. and C.S. Also, the un-objected-to facts in the PSR do not establish that Mr. Konigsmark coerced or pressured any of the victims. The PSR does reflect that Mr. Konigsmark cooperated with law enforcement. PSR ¶ 12. Specifically, Mr. Konigsmark admitted that he sent A.P. pictures of his penis, and that he had sexual intercourse

8

with A.P.  PSR ¶ 12.  It is also mitigating that Mr. Konigsmark neither created images of, nor sought to create images of his sexual contact with A.P.

Mr. Konigsmark's history and characteristics also favor a downward variance.  He did not have a stable childhood.  PSR ¶¶ 67-70; Exhibit E.  He was physically and mentally abused by his mother's live-in boyfriend, he was ignored by his father between the ages of eight and the instant offense, and his mother could not be bothered to make sure that Mr. Konigsmark received the help he needed to overcome his disability to succeed in school.  PSR ¶¶ 67 and 68;  Exhibit D.  Under these circumstances, it is noteworthy that, before the instant offense (which took place over a relatively short period of time), Mr. Konigsmark, outside of a couple of speeding tickets, has had no interaction with law enforcement or the criminal justice system.  PSR ¶¶ 58-65.

The aforementioned, Mr. Konigsmark's acceptance of every one of the recommended special conditions, and the possibility of a life-term of supervised release strongly suggest that he will not be a continuing danger to the community.  *See United States v. Shipley*, 560 F. Supp. 2d 739 (S.D. Iowa 2008).  Mr. Konigsmark has shown that the mere interaction with law enforcement was enough to fully deter him.  Indeed, Mr. Konigsmark's demonstrated sense of shame further evidences that a lesser sentence of imprisonment is necessary to deter him from criminal conduct.  PSR ¶¶ 73 and 74.

Finally, Mr. Konigsmark will receive sex offender treatment in prison, and as one district court has observed, "sentences that are too long undercut the ability of the Bureau of Prisons to set up the system of rewards and punishments needed to guide sex offenders capable of rehabilitation toward a better future."  *United States v. Burns*, No. 07 CR 556, 2009 U.S. Dist. LEXIS 100642, 2009 WL 3617448 (N.D. Ill. 2009).  He will also be required to register due to

9

his sex offender status. All indications, from the opinion of the Defense expert to the support that Mr. Konigsmark has waiting for him, are that Mr. Konigsmark will abide by his requirements and be able to conform his conduct to the law going forward. Exhibits C and E.

## IV. Conclusion

For all of the above reasons, Mr. Konigsmark requests that the Court vary downward to a sentence not greater than necessary to meet the goals of § 3553(a).

FEDERAL DEFENDER'S OFFICE
222 Third Avenue SE, Suite 290
Cedar Rapids, IA 52401-1509
TELEPHONE: (319) 363-9540
TELEFAX: (319) 363-9542


BY:/s/: Christopher J. Nathan
CHRISTOPHER J. NATHAN
christopher_nathan@fd.org
ATTORNEY FOR DEFENDANT,
TYLER KONIGSMARK


cc: U.S. Attorney's Office
U.S. Probation Office


**Certificate of Service**
I served a copy of this document on the attorneys of record of
all parties as follows:

1. Method of service:    ( x )  electronic mail

2. Date served:   November 23, 2016

I declare that the statements above are true to the best of my
information, knowledge, and belief.

By:  /s/ K. Jensen